■ In the Matter of JAMES TAYLOR, Respondent, v A. BARTON CASS, as Commissioner of the Department of Public Works, County of Suffolk, Appellant.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Commissioner of the Suffolk County Department of Public Works, dated March 30, 1984, which terminated the petitioner's employment as a senior sewage treatment plant operator, the appeal is from a judgment of the Supreme Court, Suffolk County (Brown, J.), dated February 28, 1985, which, after a hearing, annulled the determination and reinstated the petitioner to his former position of employment with full retroactive pay and contractual benefits from the date of termination.

Judgment affirmed, without costs or disbursements.

The petitioner, prior to his termination, was employed by the County of Suffolk as a senior sewage treatment plant operator at its Bergen Point sewage treatment plant. In 1983, the petitioner was brought up on disciplinary charges pursuant to Civil Service Law § 75. That disciplinary proceeding was eventually settled by a stipulation wherein the petitioner agreed to be placed on probation for a period of six months and to be terminated "without another hearing" if, during the probationary period, his job performance, in the opinion of his supervisor, was "adversely affected" by his "consumption of alcohol". The petitioner was placed on a six-month disciplinary probationary period effective March 2, 1984.

The petitioner was subsequently served with a notice of infraction on March 20, 1984. The notice charged the petitioner with "failing to give a fair day's work" and "sleeping during [the] scheduled working hours" on that date. By letter

dated March 30, 1984, the petitioner was terminated from his employment without being afforded a hearing. The letter stated, *inter alia:* "You are fully aware of the reasons for this action".

The petitioner then commenced the instant CPLR article 78 proceeding alleging, *inter alia,* that the charges against him had nothing to do with the consumption of alcohol and he therefore could not be dismissed without a disciplinary hearing pursuant to Civil Service Law § 75. After a hearing, Special Term made a finding of fact that the petitioner was not intoxicated on March 20, 1984. Accordingly, Special Term held as follows:

"[I]t is clear that there was no rational basis for the Commissioner's determination to dismiss the petitioner in the manner that he did. The prior stipulation agreed to by the petitioner specifically provided that he could be dismissed without a hearing only if the petitioner's performance was adversely affected by alcohol. Given the narrow confines of that stipulation, it was arbitrary and capricious for the Commissioner to dismiss the petitioner without a hearing based on charges that the petitioner failed to give a fair day's work and slept during scheduled working hours (CPLR § 7803 subd 3).

"Accordingly, the petitioner is entitled to a judgment reinstating him to position of Senior Sewage Treatment Plant Operator with full retroactive pay and contractual benefits from March 30, 1984."

We agree with the determination of Special Term. The petitioner's co-worker, who reported the petitioner to his supervisors, testified at the hearing that he did not inform the supervisors that he believed that the petitioner had been drinking. Indeed, the notice of infraction served on the petitioner failed to indicate that the petitioner was being charged with intoxication on the job, even though the preprinted form which was used by the county listed, among 25 types of infractions, the charge of "[i]mpaired on the job by intoxicants and/or drugs". Moreover, the letter of termination sent to the petitioner also failed to state that intoxication was the reason for his dismissal. Finally, the civil engineer in charge of the Bergen Point plant testified on cross-examination that the petitioner was terminated solely for the reasons set forth in the notice of infraction.

Under the circumstances, the petitioner should not have been dismissed without a hearing, and the judgment appealed from is therefore affirmed. Lazer, J. P., Mangano and Brown, JJ., concur.

Weinstein, J., dissents and votes to reverse the judgment appealed from, confirm the determination, and dismiss the proceeding on the merits, with the following memorandum: I find no basis in the record to support Special Term's conclusion that it was arbitrary and capricious for the respondent commissioner to terminate the petitioner's employment as a senior sewage treatment plant operator without a hearing. Upon review of the record and in consideration of the fact that a prior stipulation of settlement provided that the petitioner, who was placed on probation, could be dismissed without a hearing if his job performance was adversely affected by alcohol, I conclude that a rational basis existed to support the determination to dismiss the petitioner without a hearing (see, Matter of Pell v Board of Educ., 34 NY2d 222, 231).

The record contains eyewitness testimony to the effect that the petitioner, while at work on the morning of March 20, 1984, exhibited an inability to lead his subordinates as a senior operator. His behavior was indicative of intoxication— swearing in a loud and abusive manner, swaying back and forth, and an apparent inability to walk or stand. Moreover, an eyewitness detected the aroma of alcohol on the petitioner's breath. A second eyewitness confirmed the fact that the petitioner's speech at the time was hesitant and slightly slurred and that he smelled of alcohol. One of the employees even took a photograph of the petitioner asleep in the control room during the work shift.

The confusion emanating from the failure of the notice of infraction to specifically mention the petitioner's intoxication is explainable. The employee who prepared the notice of infraction was under the impression that he was not permitted to make such a determination on the report. Rather, it was his belief that in order to determine whether an employee was intoxicated while on duty, it would be necessary to administer a chemical test to confirm his opinion concerning that individual's state of sobriety. Robert Carballeira, the principal engineer and general supervisor of operations at the subject facility, testified that he too had been advised that it would be impossible to commence an action against an employee for on-the-job intoxication unless that employee's intoxication could be corroborated with a "meter" such as the police utilize. Consequently, he advised his subordinates not to write anyone up for intoxication unless it could be proven. Rather, the subordinates should write up the obvious effects of a particular case, i.e., sleeping on the job. Carballeira unequiv-

ocally testified on redirect examination that the petitioner's employment was terminated because he was intoxicated which resulted in his sleeping on the job. This conclusion was confirmed by two eyewitnesses. Moreover, when confronted with accusations of his intoxication on the morning of March 20, 1984, the petitioner expressed remorse, admitted that he was wrong and vowed to try to do better.

Under the circumstances, the appellant's decision to terminate the petitioner's employment was not arbitrary, capricious, or irrational.